**In the Matter of Frank A. VINCENT and Kitty A. Vincent, Debtors.**

**MAAS BROTHERS, INC., a Florida Corporation, Plaintiff,**

v.

**Frank A. VINCENT and Kitty A. Vincent, Defendants.**

**Bankruptcy No. 80–889.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

March 19, 1981.

John R. Shuman, Clearwater, Fla., for Maas Brothers, Inc.

David W. Steen, Tampa, Fla., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 business reorganization case and the above-captioned adversary proceeding was commenced by a complaint filed by Maas Brothers, Inc. (Maas) against Frank A. Vincent and Kitty A. Vincent, his wife, (Vincents), the Debtors involved in a Chapter 11 case. Maas first sought a modification of the automatic stay and in the alternative, an order prohibiting or conditioning the use of its collateral and to provide adequate protection if the Debt-

ors are permitted to retain and use the collateral. The Vincents filed their answer to the original complaint and their original Answer basically admitted most and denied some of the allegations set forth in the complaint.

On November 13, 1980, this Court granted leave to the Vincents to file a counterclaim who filed their counterclaim in due course. Count I of the counterclaim is based on an alleged breach of implied warranty of merchantability by Maas. The claim set forth in Count II is based on § 672.313 of the Florida Statutes and claims a breach of an express warranty. The Vincents prayed for a money judgment against Maas for the damages they allegedly suffered as the result of the breaches claimed by them in Count I and Count II of the counterclaim.

On December 1, 1980, Maas filed a pleading entitled "Answer" rather than a reply which set forth certain defenses denoted as affirmative defenses, which are not, in fact, really affirmative defenses within the definition of that term.

On December 16, 1980, this Court entered an Order, based on a stipulation of the parties, and vacated the automatic stay and permitted Maas to proceed to enforce its lien claim against its collateral unless the Vincents pay $978 to Maas within 30 days from the date of the entry of the order, which amount was found to be the value of the collateral. The Vincents failed to make this payment and Maas repossessed the collateral involved in this controversy, a wall-to-wall carpet and some draperies with the normal accessory items of the drapery.

The parties thereafter focused their attention to the issues raised by the counterclaim and continued their skirmishes during the discovery process. The matter was finally set down for final evidentiary hearing on the remaining issues at which time the following facts were established and which may be summarized as follows:

Sometime prior to June of 1978, an interior decorator, an employee of Maas, came to the home of the Vincents' for the purpose of discussing a possible sale of carpet and draperies. During the initial discussion, the representative of Maas voiced her concern about the large windows and indicated that lining would be in order to minimize sun damage to the draperies. Shortly thereafter, the Vincents decided to make the purchase and bought the carpet which was on sale at that time, reduced from $21 to $15 per square yard.

The purchase price for the carpeting, installed, was $2,114.53 and the draperies, installed, were $3,186.35. Shortly after the installation of the carpeting, the Vincents complained to Maas that the padding was not proper. In response to the complaint, Maas promptly caused a removal of the improper padding and re-installed the carpet.

Although the Vincents claim that within 6 months they noticed fading of the drapes and matting of the carpet, especially in the traffic pattern, and they attempted to obtain satisfaction from Maas, this Court is satisfied that they had not lodged a complaint with Maas until April, 1980, or a year and a half after the purchase. The Vincents claim that they repeatedly called the interior decorator who sold them the carpeting and draperies, and she never returned their calls and the person who answered the telephone of the decorator, according to the Vincents, was a person by the name of Mrs. Hoskins. This Court is satisfied that during the years of 1978 up to the present, Maas did not have an employee by that name, either in its Customer Service Department or in its Credit Department. What is clear, however, is that during this time, Maas had an employee named Pat Haskins who was employed by the collection department and repeatedly attempted to collect an overdue balance on the Vincent account during the spring of 1980.

The record further reveals that the employees of Maas in the collection department contacted the Vincents as early as April of 1979, without being able to collect the outstanding balance. Between March of 1979 and April of 1980, there were numerous contacts between the Vincents and employees of Maas who tried to collect the

past due account. At no time did the Vincents voice any complaint and mention any defect of the carpeting and draperies (Counter Df's Exh. # 1). The evidence further reveals that all complaints received by Maas, as a matter of general company policy, are immediately referred to the Customer Service Department who sets up a file on the matter and promptly investigates the consumer's complaint. There is no record in the Customer Service Department of any complaint of the Vincents until April of 1980, which was received through a telephone call from Pat Haskins, a collector of Maas.

There is no question that the carpeting is badly soiled and the drapes have sun streaks on them. According to the testimony of an expert, presented by Maas, the carpeting was not properly cared for and stated that if the detergent or shampoo used for cleaning was not completely removed, this would cause matting of the carpet. The expert also stated that if the carpet is cleaned by using soap and brush method, it would grind in the dirt rather than removing it from the carpet. It is without dispute that Mr. Vincent did rent cleaning equipment and used the soap and brush method. It is also without dispute that the Vincents have two dogs kept in the house and the carpeting, according to the expert's visual inspection, shows extensive urine stains throughout the installation. It is admitted by the Vincents that they have had a difficult time with one of their dogs ever since a member of the family died to whom the dog was strongly attached. The evidence further reveals that the brown vertical streaks on the drapes were confined to the folds of the drapes which were exposed to the exterior of the residence.

No expert testimony was presented in support of the Debtor's counterclaim. Neither was any evidence presented in support of the claim of a breach of express warranty based on Fla.Stat. § 672.313. For this reason, this Court directed a dismissal of the claim set forth in Count II.

This leaves for consideration the claim set forth in Count I of the counterclaim which is based on the breach of an implied warranty of merchantability of the carpeting and draperies.

Section 672.314 of the Florida Statutes makes every seller of goods who is a merchant with respect to such goods, an implied warrantor that the goods are merchantable unless excluded or modified. Chapter 672.314(2) defines the term "merchantability" and states that it includes an implied warranty that the goods are fit to use for their normal services or acceptable in the trade and are of fair average quality. To assert a cause of action for breach of implied warranty, the buyer must prove that there is an implied warranty; a breach of the warranty and damages resulting as a proximate cause of the breach. See, *Burbage v. Atlantic Mobilehome Suppliers Corp.*, 21 N.C.App. 615, 205 S.E.2d 622 (1974); Dusenberg & King, *Bender's U.C.C. Service, Sales and Bulk Transfers*, § 7.01[4]; *Lucas v. Firestone Tire and Rubber Co.*, 458 F.2d 495 (5th Cir. 1972); *McCarthy v. Florida Ladder Co.*, 295 So.2d 707 (Fla. 2d DCA 1974).

By virtue of an express provision of the UCC, as adopted in this State, Fla. Stat. § 672.607(4), the burden is on the buyer to establish any breach with respect to the goods accepted. While it is true that a buyer of goods may recover on a claim for breach of implied warranty by proving the breach through direct or circumstantial evidence and it is not necessary to produce evidence by a qualified expert, it is clear that the buyer has a burden to show that there are existing circumstances which tend to exclude all reasonable inferences except defectiveness. The damages which a buyer may recover if breach is established, are equal to the difference at the time and place of the acceptance of the goods between the actual value of the goods accepted and the value they would have had if they had been as warranted, less any proper deductions. *Smart Chevrolet Co. v. Davis*, 262 Ark. 500, 558 S.W.2d 147 (1977). Recovery would not be permitted where the difference in value had not been shown. For a similar result, see also *Chaney v. General*

*Motors Acceptance Corporation,* 349 So.2d 519 (1977 Miss.). See also *Curtis v. Fordham Chrysler Plymouth, Inc.,* 81 Misc.2d 566, 364 N.Y.S. 767 (Civ.Ct.1975); 67 Am. Jur.2d *Sales,* § 741.

Lastly, it is equally clear that the buyer who asserts a claim for breach of implied warranty must, within a reasonable time after he has discovered or should have discovered the breach, notify the seller of the breach, otherwise he is barred from any remedy. Fla.Stat. § 672.607(3)(a).

■ Considering the foregoing, it is evident that the Vincents have failed to establish their right to recovery. First, the Vincents failed to establish that the carpeting and draperies were not merchantable within the meaning of § 672.314 of the Florida Statutes. The only thing the Vincents established is that the carpeting was soiled and matted and some of the strands were untwisted. However, there is no evidence in this record to show that it was a manufacturing defect and was caused by any inherent defect in the carpet. Next as to the draperies, there is no evidence, except there are vertical streaks on the drapes, but no evidence to establish that it was caused by inherent defects in manufacturing or below standard quality of the fabric.

■ Most importantly, however, it is clear that the Vincents did not notify Maas within a reasonable time as required by Fla.Stat. § 672.607(3) and contrary to the contention, this Court concludes that there was no complaint lodged with Maas concerning the quality of the carpeting and draperies until a year and a half after the purchase and this is certainly not a reasonable time.

■ Lastly, this record is totally devoid of any evidence of damages suffered by the Vincents as the result of the alleged breach of warranty by Maas.

A separate final judgment will be entered in accordance with the foregoing.